7  664
d113 195

## W. C. GOODRICH *v.* ASA PATTINGILL et al.

The plaintiff obtained an attachment against the defendant, but the sheriff did not take actual possession of the property under the writ, and no act of possession by him or his successors is shown, for five years after its return. About five years after that time, the attaching creditor had a curator *ad hoc* appointed to defendant, obtained judgment, and seized the lots under an execution. In the meantime, and within two years from the date of the attachment, defendant sold the property, and it passed into the hands of purchasers who were ignorant of the attachment. *Held:* The law required that the sheriff should have seized and detained the property; that he and his successors should have taken charge and kept possession of it; and for the failure of *Goodrich*, the attaching creditor, to have seen this done, and to have prosecuted his suit with diligence, innocent purchasers of the property should not suffer.

Sheriffs must seize actually, and not fictitiously, where the law requires; and third persons must not suffer by their neglect to do so.

APPEAL from the Third District Court of the Parish of Jefferson, *Clarke*, J. GOODRICH
*Dunlap* and *Clarke*, for plaintiff. *Ogden* and *Duncan*, for defendants. PETTINGALE.

By the court:

PRESTON, J. The evidence satisfies us that the sheriff did not, on the 6th of December, 1836, take actual possession of the lots in controversy, by virtue of *Goodrich's* attachment. He had seized, and was about to sell them on that day, in the suit of *Kohn* v. *Pettingale*. He returned the writ of attachment on the same day that he had seized the lots under it. No act of possession by him or his successors in office is shown, for five years afterwards. No steps were even taken in *Goodrich's* suit during that period. About five years after the return of the writ, he had a curator *ad hoc* appointed to *Pettingale*, obtained judgment, and seized the lots under an execution.

The seizure under the writ of attachment, was a paper seizure, and could be found only among the papers of a dormant suit, in the parish court of the parish of Jefferson. The law required that the sheriff should have seized and detained the property, that he and his successors should have taken charge of, and kept possession of it. And for the failure of *Goodrich* to have seen this done, and to have prosecuted his suit with diligence, innocent purchasers of the property should not suffer.

Now, it appears that *Pettingale* sold the lots to *D. McMillen*, in 1837, and he to *Bach*, shortly afterwards; that the latter fenced them in, and publicly sold or disposed of some of them, and the owners are made defendants in this case. If the sheriff and his successors in office had actually seized, detained, taken charge of, and kept possession of the lots, and *Goodrich* had prosecuted his attachment suit with diligence, all this would not have occurred. It occurred because it was a paper attachment, apparently abandoned, for years; and should not, therefore, affect third persons. It should not be patched up by an amended return, made fifteen years afterwards, by a person no longer sheriff, and long after a tardy final judgment had been rendered in the case. Nor should parol evidence, to bolster it up, be admitted, to the prejudice of the titles of purchasers of the property not knowing of the attachment.

Sheriffs must seize and hold actually, not fictitiously, where the law requires it; and third persons must not suffer by their neglect to do so.

It is next contended, that the validity of the attachment has become the thing adjudged in this very suit. Admitting that *Goodrich* may avail himself of this defence, without pleading it in the district court, he has not clearly established the plea.

The judgment of the Supreme Court, reported in 9 R. R. 393, supports the plea of *res judicata* more strongly than any other decree in the case. The facts leading to that decision must therefore be examined.

*Goodrich* seized the lots under his execution, in 1842. *Bach* enjoined the sale for himself and his vendees. The Parish Court of Jefferson dissolved the injunction. The First District Court, on appeal, reversed that decision, and made the injunction perpetual, on the ground, that the lots held by *Bach*, and now seized, were not identified with those attached by *Goodrich*. The Supreme Court affirmed the judgment of the district court, perpetuating the injunction. The decree is, therefore, in favor of *Bach*, and yet is urged as adjudging a matter against him—that *Bach's* lot had been attached in 1836. And yet, this is a matter which could not be adjudged at all, until the lots, about to be sold in 1842, were identified with lots supposed to have been attached in 1836; and for the very want of this identification, the injunction was made perpetual.

But, there was a reservation in the decree, in favor of *Goodrich*, authorizing him to prosecute the sale of the lots, on proving their identity with those attached by him. This assumes, that the lots about to be sold were attached, if identified with those attached; but it is not a decree to that effect; nor could any decree to that effect be made until the identification.

In the opinion, the court nowhere state it as a matter of judgment by them, that the attachment had been legally executed. It is merely stated, that "it is urged that the lots in question, having been attached in 1836, in the suit brought by *Goodrich* against *Pettingale*, they could not be sold to his prejudice." "If this were clearly made to appear," the court continues to say, "the validity of the subsequent sale might well be questioned, as a debtor, whose property is attached, cannot divest himself of it so as to defeat the rights of the attaching creditor."

These, which are the strongest expressions in support of the validity of the attachment, in any part of the opinion, amount to neither a decision for nor against its validity.

The expressions in the opinion are stronger in favor of *Bach*; for, the court say, "having shown title in his assignees, it was incumbent on the defendant to show clearly, that the conveyance to *McMillen* was made in fraud of his vested rights under his attachment, and was consequently null and void as to them." In this long protracted litigation *Goodrich* has never shown that. To do so, it, was incumbent on him clearly to have shown vested rights, that is, in this case, a valid and continued attachment, or, at least, known to *Bach*, if only a paper attachment, at the time of his purchase. These things, alone, could render the purchase illegal as to the vested rights.

Even if the original attachment had been actual, and valid, it would raise a serious question, whether it would continue as to third persons, the sheriff notoriously having no possession, and the plaintiff failing to prosecute his suit with diligence, when they acquired the property.

The decretal part of the opinion is explicit, that *Bach's* injunction should be perpetuated. The reservation in favor of *Goodrich* was not put in the form of a decree, and amounts to nothing more than that he should not be prejudiced by the decree. As the Supreme Court, therefore, in neither its opinion nor decree, declared the attachment valid, and, as the district court had not passed upon its validity at all, we cannot consider the validity of the attachment a matter adjudged. If we even should consider the decree in favor of *Bach* with the reservations, as a nonsuit against him, it would amount only to a judgment that the parties should "fight their battle o'er again." And so the parties considered it, for, in the present suit, the main contest was as to the validity of the attachment, which *Goodrich* bolstered up with wonderful skill, by amendments to the sheriff's return, and parol testimony; and *Bach* resisted, as incurably defective.

Believing that the matter in controversy has never been adjudged between the parties, and that the attachment was invalid, because the lots in controversy were never taken into the possession of the sheriff, or, at least, that he did not retain them in his possession, so that they were purchased, possessed, and sold by the appellee, without a knowledge, so far as proved, of the attachment.

It is affirmed, with costs.

ROST, J. The record in this case was first given to me, and I had come to the conclusion that all the questions raised, except that of the identity of the lots, were closed by the decisions in 9 R. R., and 4 Ann.; but, as two of my

brethren are of opinion, that the plea of *res judicata* is not made out, I must yield my opinion, so far as to agree with Mr. Justice Slidell, that the question is doubtful; and, if doubtful, that the plea cannot be sustained. I agree in the opinion of the majority of the court, as to all other questions on the case.

Application for re-hearing refused.